IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| WILLIE ROBINSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:18-cv-156-ECM |
| ) | [WO] |
| ALEXANDER CITY, et al. ) | |
| ) | |
| Defendants. ) | |

## **MEMORANDUM OPINION AND ORDER**

Plaintiff Willie Robinson is the former Chief of Police of Alexander City, Alabama. In March 2018, the Plaintiff filed a complaint against Defendants Alexander City, Mayor Jim Nabors, and city council members Bobby Tapley, John Eric Brown, Tomas J. Spraggins, and Timothy Byron Funderbunk related to his termination as Chief of Police.

This mater is before the court on the Defendants' Motion to Dismiss, pursuant to Fed. R. Civ. P. 12(b)(6), for failure to state a claim upon which relief can be granted. (Doc. 7.) This motion has been fully briefed and is ripe for review. For the reasons stated herein, the Defendants' Motion is due to be denied.

### I. BACKGROUND[1]

Plaintiff Willie Robinson is an African American male who began employment with Defendant Alexander City in or around 1991. During his over twenty-five-year employment history, he was promoted in rank to Sergeant, Lieutenant, and Deputy Chief.

---

[1] This recitation of the facts is based upon the Plaintiff's complaint, which is presumed to be true for the purposes of this motion.

In July 2013, the city council unanimously voted to promote the Plaintiff to Chief of Police. He received positive reviews and did not receive any performance-related discipline.

During his tenure as Chief of Police, the Plaintiff tried to hire more qualified African American employees. He also asserts that he discussed the need to hire more African American employees in the fire and police departments with Fire Chief Kem Jones. The Plaintiff was the only African American employee in a department head position and there were only a handful of African American employees working for the city.

In November 2016, the city elected a new Caucasian Mayor, Jim Nabors, and four new Caucasian city council members: Bobby Tapley, John Eric Brown, Tomas J. Spraggins, and Timothy Byron Funderbunk. The new administration planned to review five positions, including the Plaintiff's. During evaluations, the Plaintiff was informed that there were no issues with his performance. According to the Plaintiff, despite his positive evaluation, the new council members and mayor began privately communicating about his position in violation of the Open Meeting Act. Then, in January 2017, the city council voted the Plaintiff out of his position as Police Chief, pursuant to its statutory authority. Alexander City ALA. Code § 2-41 ("The city council, at the first regular meeting, shall elect a city clerk, chief of police . . . and other officers necessary. The duties of whom shall be regulated by ordinance."). The Plaintiff was terminated without being provided a reason and was replaced with a Caucasian male who the Plaintiff describes as less qualified. Kem Jones, the Fire Chief with whom the Plaintiff discussed increasing diversity hiring, was

also terminated and replaced with a Caucasian male. The Plaintiff further alleges that he was not provided the opportunity to remain employed as a police officer after the decision to replace him as Police Chief.

Based on these allegations, the Plaintiff brings several claims: (1) race discrimination claims under Title VII and 42 U.S.C. § 1981[2] (presumably through 42 U.S.C. § 1983) against Defendant Alexander City; (2) a § 1983 Fourteenth Amendment Equal Protection claim against Defendant Alexander City[3]; and (3) § 1983 Fourteenth Amendment Equal Protection claims against Defendants Nabor, Tapley, Brown, Spraggins, and Funderbunk in their individual and official capacities.

## II. LEGAL STANDARD

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint against the legal standard set forth in Rule 8: "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss,

---

[2] The court observes that "§ 1983 contains the sole cause of action against state actors for violations of § 1981." *Butts v. County of Volusia*, 222 F.3d 891, 892 (11th Cir. 2000); *Omanwa v. Catoosa County,* 711 F. App'x. 959, 961 (11th Cir. 2017). Thus, the Plaintiff cannot directly sue under § 1981. The Plaintiff may, however, sue under § 1983 for a violation of § 1981, and the court finds that the complaint can be fairly read to allege such a claim. *See Blackledge v. Alabama Dep't of Mental Health & Mental Retardation,* No. CIV.A. 2:06CV321-ID, 2007 WL 3124452, at *7, n. 7 (M.D. Ala. Oct. 25, 2007) (reading complaint as alleging § 1981 violation as § 1983 claim for violation of § 1981); Fed. R. Civ. P. 8(e) ("Pleadings must be construed so as to do justice").

[3] The title of Count One makes clear that the claim is only against Defendant Alexander City. Count Three, similarly clarifies that the claim is against Defendants Nabor, Tapley, Brown, Spraggins, and Funderbunk. The title to Count Two does not name which defendant or defendants are liable for that claim. Throughout that section, however, the Plaintiff only refers to "Defendant," which the Plaintiff states in paragraph 3, refers only to Alexander City. Moreover, Count Three is also a § 1983 claim for violations of Equal Protection, which would make Count Two redundant as to the individual Defendants. Accordingly, the court deduces that Count Two is intended to only proceed against Defendant Alexander City.

a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U. S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U. S. 544, 570 (2007)). "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U. S. at 678. Conclusory allegations that are merely "conceivable" and fail to rise "above the speculative level" are insufficient to meet the plausibility standard. *Twombly*, 550 U. S. at 555, 570. This pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. Indeed, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.*

### III. DISCUSSION

**A.      The Plaintiff's complaint meets the *Twombly Iqbal* pleading standard.**

The Defendants argue that the "Plaintiff's complaint is simply devoid of any factual allegations which demonstrate Plaintiff is entitled to the relief he seeks." (Doc. 8, at 4.) Accordingly, the Defendant argues that the Plaintiff has not included enough facts to "raise a right to relief above a speculative level" (*Id*. at 5) (citing *Twombly*, 550 U.S. at 555), entitling the Defendants to dismissal for failure to state a claim. The Defendants more

specifically argue that the Plaintiff failed to allege facts which demonstrate an intent to discriminate in order to hold the individual Defendants liable, and that the Plaintiff failed to meet the basic requirements to establish municipal liability.

    **i.**     **The Plaintiff pleads sufficient facts to state a claim against the individual Defendants under the Equal Protection Clause of the Fourteenth Amendment.**

The Plaintiff does not need to prove his case at this point; a complaint is sufficient if it "identif[ies] facts that are suggestive enough to render [the claim] plausible." *Watts v. Florida Intern. University*, 495 F.3d 1289, 1296 (11th Cir. 2017) (citing *Twombly*, 550 U.S. at 556)). In the complaint, the Plaintiff asserts that he is an African American who worked for Alexander City as its Chief of Police. The Plaintiff further alleges that he was the only African American department head, and that there were few African Americans on the police force, working in City Hall, or working in the utility department. The Plaintiff asserts that both he and Kem Jones, the Chief of the Fire Department, discussed the need to hire more qualified African American employees into their respective departments and that they were both subsequently terminated. The Plaintiff asserts that he was repeatedly promoted during his twenty-five-year career with the police department, was unanimously voted into the Police Chief position in 2013, and never had any discipline problems.

According to the complaint, a new Caucasian mayor and four new Caucasian city council members were elected in 2016. The Plaintiff claims that the new administration

5

planned to review several positions and that during the Plaintiff's evaluation, he was informed that there were no issues with his job performance.

The Plaintiff asserts that thereafter, the four Caucasian city council members began to communicate privately regarding his employment and that such communications violated the Open Meetings Act. The Plaintiff claims he was subsequently terminated, without any reason provided and without the opportunity to remain employed as a police officer. According to the Plaintiff, his replacement was a less qualified Caucasian male. The Plaintiff also asserts that the Fire Chief, Kem Jones, with whom he had discussed increasing diversity hiring, was similarly terminated and replaced with a white man.

Based upon these allegations, the Plaintiff asserts that the Defendants terminated him on the basis of his race, and he claims that Defendant Alexander City has a habit of discriminating against African Americans and minorities. Contrary to the Defendants' assertion that the complaint is devoid of facts and fails to provide specifics, the Plaintiff provides sufficiently detailed allegations that "plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Keating v. City of Miami*, 598 F.3d 753, 763 (11th Cir. 2010). Moreover, "[c]ourts typically allow the pleader an extra modicum of leeway where the information supporting the complainant's case is under the exclusive control of the defendant." *United States v. Baxter Int'l, Inc.*, 345 F.3d 866, 881 (11th Cir. 2003). Where, as here, the facts regarding his termination are largely outside of the reach of the Plaintiff, the Plaintiff has additional

6

leeway in framing his complaint. Thus, the facts alleged by the Plaintiff in the complaint are enough, at this juncture, to satisfy his burden to provide a short and plain statement demonstrating his entitlement to relief.

### ii. The Plaintiff pleads sufficient facts to state a claim against Alexander City.

The Plaintiff similarly pleads sufficient facts to state a claim against Alexander City. To hold a municipality liable for an action, "a municipality must be found to have *itself* caused the constitutional violation at issue; it cannot be found liable on a vicarious liability theory." *Skop v. City of Atlanta*, 485 F.3d 1130, 1145 (11th Cir. 2007) (emphasis in original). "[O]nly deprivations undertaken pursuant to governmental 'custom' or 'policy' may lead to the imposition of governmental liability." *Griffin v. City of Opa-Locka*, 261 F.3d 1295, 1307 (11th Cir. 2001). A plaintiff must plead specific facts to "identify either (1) an officially promulgated [municipal] policy or (2) an unofficial custom or practice of the [municipality] shown through repeated act of a final policymaker for the [municipality]." *Knight v. Miami-Dade County*, 856 F.3d 795, 819 (11th Cir. 2017) (citing *Grech v. Clayton Cty., Ga.*, 335 F.3d 1326, 1329 (11th Cir. 2003) (en banc)). To demonstrate an unofficial policy, the practice must be so widespread and so well-settled as to constitute a custom of the municipality, or, the municipality must fail to correct offensive actions of its employees, displaying indifference towards the conduct. *Griffin*, 261 F.3d at 1307.

The Plaintiff claims that African Americans are underrepresented in city departments and alleges that another department head interested in increasing diversity was similarly terminated and replaced with a white male. At this stage of the litigation, the Plaintiff has adequately pleaded facts sufficient to "identify a municipal 'policy' or 'custom' that caused [the] injury." *See Bd. Of County Com'rs v. Brown*, 520 U.S. 397, 403 (1997).

**B.** **The Defendants are not entitled to legislative immunity.**

The Defendants assert that they are entitled to absolute legislative immunity. The purpose of legislative immunity is to protect government officials when they take actions that are "an integral part of the deliberative and communicative processes by which [legislators] participate in . . . proceedings with respect to the consideration and passage or rejection of proposed legislation." *Smith v. Lomax*, 45 F.3d 402, 405 (11th Cir. 1995) (quoting *Gravel v. United States*, 408 U.S. 606 (1972)); *see also Yeldell v. Cooper Green Hosp., Inc.*, 956 F.2d 1056, 1062 (11th Cir. 1992) ("only those acts which are 'necessary to preserve the integrity of the legislative process' are protected"); *Espanola Way Corp. v. Meyerson*, 690 F.2d 827, 829 (11th Cir. 1982) ("the absolute immunity inquiry becomes one of whether the Commissioners in the instant case were engaging in legislative activity"). This immunity encompasses voting for or against enacting a law, but the act of voting alone does not render officials immune from suit. *Lomax*, 45 F.3d at 405. Generally, this broad grant of immunity applies to "'prospective, legislative-type rules'

8

that have general application." *Bryant v. Jones*, 575 F.3d 1281, 1306 (11th Cir. 2009) (quoting *Alexander v. Holden*, 66 F.3d 62, 67 (4th Cir. 1995)).

The Eleventh Circuit cautioned that the protection of legislative immunity must be "carefully tailored to its purpose." *Bryant*, 575 F.3d at 1304. This protection "is not 'simply for the personal or private benefit of [legislators], but to protect the legislative process by insuring the independence of individual legislators.'" *Id*. (quoting *United States v. Brewster*, 408 U.S. 501, 507 (1972)). Accordingly, "[w]here the decision affects a small number or a single individual, the legislative power is not implicated, and the act takes on the nature of administration." *Yeldell*, 956 F.2d at 1059; *Lomax*, 45 F.3d at 406; *Hughes v. Tarrant County Tex.*, 948 F.2d 918, 921 (5th Cir. 1991); *see also Crymes v. DeKalb County Ga.* 923 F.2d 1482, 1485 (11th Cir. 1991) ("if the decision impacts specific individuals, rather than the general population, it is more apt to be administrative in nature"). Employment decisions are generally cast as administrative decisions and legislative immunity does not apply. *Bryant*, 575 F.3d at 1306; *Lomax*, 45 F.3d at 406.[4]

This issue was squarely before the Eleventh Circuit in *Smith v. Lomax*, 45 F.3d 402 (11th Cir. 1995). There, the Board of Commission of Fulton County, Georgia voted to

---

[4] Where the legislative act in question involves budgeting decisions that eliminate positions or departments, the actors may be protected by legislative immunity even when the budgetary decision only affects one person. *See Bryant*, 575 F. 3d at 1306 (distinguishing employee personnel decisions from the elimination of a public employment position); *Bogan v. Scott-Harris*, 523 U.S. 44, 56 (1998) (holding that the legislative decision at issue "involved the termination of a position, which, **unlike the hiring or firing of a particular employee**, may have prospective implications that reach well beyond the particular occupant of the office") (emphasis added)). There is no argument here, however, that the vote in question had anything to do with budgeting or eliminating positions.

replace its white female clerk with an African American female. Like the law at issue here, there was a provision that the clerk would serve for six years "or until his successor is appointed and qualified but said clerk is subject to removal at the pleasure of said board." *Id*. at 403, n.1. There, the Eleventh Circuit agreed that "employment and personnel decisions are administrative in nature and do not involve the deliberative legislative processes encouraged and protected by the legislative immunity doctrine." *Id*. at 405. The court explained that it had already "expressly rejected the argument that the act of voting, in itself, constitutes legislative action giving rise to immunity." *Id*. at 406 (citing *Crymes*, 923 F.2d 1482). Thus, the Eleventh Circuit found that the legislators were not entitled to the protection of legislative immunity for the decision to not reappoint an employee. *Id*.

"There can be no question that voting on the appointment of a [Chief of Police] is not the sort of broad 'legislative' activity that is typically associated with grants of absolute immunity." *Id*. This court is "obliged to adhere to [Eleventh Circuit] precedent and conclude that the [] vote to appoint [a new Police Chief] was an administrative act and, thus, was not protected by legislative immunity." *Id*. Accordingly, the Defendants are not entitled to legislative immunity.

**C.     The Defendants are not entitled to qualified immunity.**

The individual Defendants claim they are entitled to qualified immunity because they "were performing a 'legitimate job-related function' accorded them by the Alexander

City Code, and did so "through means that were within [their] power to utilize." (Doc. 8, at 16) (citing *Holloman v. Harland*, 370 F.3d 1252, 1265 (11th Cir. 2004)).

"Qualified immunity offers complete protection for government officials sued in their individual capacities when acting within their discretionary authority if their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Mann v. Taser Intern., Inc.*, 588 F.3d 1291, 1305 (11th Cir. 2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). When officials can demonstrate that they were acting within their discretionary authority at the time of the alleged violation, the plaintiff must show that the officials violated a clearly established constitutional or statutory right to overcome qualified immunity. *Holloman*, 370 F.3d at 1264.

This court "need not engage in a lengthy discussion of the patently obvious illegality of racial discrimination in public employment." *Lomax*, 45 F.3d at 407; *see also Brown v. City of Fort Lauderdale*, 923 F.2d 1474, 1478 (11th Cir. 1991) (reversing 12(b)(6) dismissal of § 1983 race discrimination claims on qualified immunity grounds because complaint listed "specific instances of allegedly discriminatory conduct that [the plaintiff] claims led to the decision to terminated him"); *Smiley v. Ala. Dep't Transp.*, 778 F. Supp. 2d 1283, 1300–01 (M.D. Ala. 2011) (denying qualified immunity at the motion to dismiss stage because plaintiff asserted that defendants "violated his right to be free from discrimination on the basis of his race"). When the events forming the basis of this lawsuit took place in

2018, the law was clearly established that intentional discrimination in employment on the basis of race violates federal law.  *See Lomax*, 45 F.3d at 407; *Yeldell*, 956 F.2d at 1064; *Washington v. Davis*, 426 U.S. 229, 239–41 (1976).  At this point in the litigation, the allegations in the complaint are sufficient to overcome the Defendant's invocation of qualified immunity.

## IV.    CONCLUSION

In short, the Plaintiff pleads enough facts to state his discrimination claims and to put the Defendants on notice of the allegations against them.  The actions allegedly taken by the individual Defendants with respect to the Plaintiff's employment were administrative, not legislative in nature, and thus do not serve as the basis for legislative immunity.  Qualified immunity also does not provide protection where, as here, the rights that were purportedly violated were clearly established.

Accordingly, it is ORDERED that the Defendants' Motion to Dismiss (Doc. 7) is DENIED.

DONE this 13th day of March, 2019.

　　　　　　　　　　　　　　　　/s/ Emily C. Marks
　　　　　　　　　　　　　　　EMILY C. MARKS
　　　　　　　　　　　　　　　CHIEF UNITED STATES DISTRICT JUDGE