IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

WILLIE ROBINSON,                    )
                                    )
         Plaintiff,                 )
                                    )
v.                                  )          CASE NO.: 3:18-cv-00156-ECM
                                    )                      (WO)
ALEXANDER CITY, *et al.*,           )
                                    )
         Defendants.                )

**MEMORANDUM OPINION and ORDER**

## I.   INTRODUCTION

The Plaintiff Willie Robinson brings this civil rights discrimination action against

his former employers, Alexander City, Jim Nabors,[1] Bobby L. Tapley, John Eric Brown,

Thomas J. Spraggins, and Timothy Byron Funderburk (the "Defendants") in response to

the City Council's decision not to reappoint him as Chief of Police in 2017.  The Plaintiff

alleges that he was discriminated against based on his race when the Defendants failed to

reappoint him or to provide him with a new position.   He brings claims of race

discrimination pursuant to Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981.

He also proceeds under 42 U.S.C. § 1983, alleging that the Defendants violated his

constitutional right to equal protection under the law.

---

[1] The Court received a Suggestion of Death regarding Defendant Jim Nabors on May 29, 2019, reporting
that Nabors died on or before May 6, 2019. (Doc. 30).  Nabors was the newly elected Mayor of Alexander
City when the Plaintiff was not reappointed.  He was sued in his individual and official capacities.  The
Plaintiff filed nothing in response to the Suggestion of Death, and the Court finds that the claims against
Nabors are due to be dismissed.

Now pending before the Court is the Defendants' motion for summary judgment, (doc. 37),[2] and motion to strike certain of the Plaintiff's exhibits, (doc. 46).  The Plaintiff concedes that all claims against Councilmember Tapley are due to be dismissed.[3] (Doc. 44 at 17, n.76).

The Plaintiff has filed a response in opposition to the motion, (doc. 44), and the motion is ripe for review.  After careful review, the Court concludes that the motion for summary judgment is due to be GRANTED, and the motion to strike is due to be DENIED.

## II.    JURISDICTION

The Court exercises federal subject matter jurisdiction over this dispute pursuant to 28 U.S.C. § 1331 and 1343(a)(4).

Personal jurisdiction and venue are uncontested.

## III.    SUMMARY JUDGMENT STANDARD

A reviewing court shall grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a).  The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact."  *Celotex Corp. v.*

---

[2] The Court will refer to the page numbers generated by CM/ECF.
[3] The Plaintiff also represents that he is not pursuing claims against Colvin and Hardy and "consents to their dismissal as Defendants with prejudice with the parties to bear their own costs."  (Doc. 44 at 17, n.76). However, a review of the Complaint reveals that neither Colvin nor Hardy were named as Defendants.

*Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56).  The movant can meet this burden by presenting evidence demonstrating there is no dispute of material fact, or by showing that the non-moving party has failed to present evidence in support of some element of his case on which he bears the ultimate burden of proof. *Id*. at 322–23.  Only disputes about material facts will preclude the granting of summary judgment. *Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 249 (1986).  "An issue of fact is 'genuine' if the record as a whole could lead a reasonable trier of fact to find for the nonmoving party. . . . An issue is 'material' if it might affect the outcome of the case under the governing law." *Redwing Carriers, Inc. v. Saraland Apartments*, 94 F.3d 1489, 1496 (11th Cir. 1996) (quoting *Anderson*, 477 U.S. at 248).

Once the movant has satisfied this burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  The non-movant must support his assertions "that a fact cannot be or is genuinely disputed" by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) & (B).

In determining whether a genuine issue for trial exists, the court must view all the evidence in the light most favorable to the non-movant. *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003).  Likewise, the reviewing court must

draw all justifiable inferences from the evidence in the nonmoving party's favor. *Anderson*, 477 U.S. at 255. However, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (per curiam).

A reviewing court is constrained during summary judgment proceedings from making the sort of determinations ordinarily reserved for the finder of fact at a trial. *See Strickland v. Norfolk S. Ry. Co.*, 692 F.3d 1151, 1154 (11th Cir. 2012). After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a).

## IV.   FACTS

### A. The Plaintiff's Tenure with the Police Department

The Plaintiff served as the Chief of Police in Alexander City, Alabama, from 2013 to 2017. In Alexander City, City Councilmembers are elected to four-year terms. The City Council is charged with directing city policy, including appointing Department Heads. The Chief of Police is one of the Department Heads, typically appointed by the City Council to a four-year term to match their own. On July 7, 2013, after the retirement of the former police chief, the Plaintiff became the first African American man to be appointed to the position. The Plaintiff's tenure was scheduled to expire in November 2016 upon the City Council election; the incoming Councilmembers could then fill the vacancy by choosing to reappoint him or by selecting a new Chief.

Prior to his appointment, the Plaintiff served in the Alexander City Police Department for thirty-nine years.  During his tenure at the Police Department, the Plaintiff was not disciplined, and his performance evaluations were positive.  The crime rates in Alexander City fell to their lowest while the Plaintiff was Chief of Police, and, when a white police officer shot an unarmed African American man, the Plaintiff attended multiple meetings and gatherings in the community.  As Chief of Police, the Plaintiff oversaw hiring of new police officers.  The Plaintiff discussed hiring more African American police officers with another Department Head, Fire Chief Kem Jones, a white female.

**B.  The City Council 2016 Election and Subsequent Actions**

The 2016 City Council election was not kind to incumbents.  Five out of the six City Councilmembers were replaced with new Councilmembers.   The newly elected Councilmembers included Defendants Thomas J. Spraggins, Timothy Funderburk, and John Eric Brown, all white men.  Also newly elected were Audrey "Buffy" Colvin and Scott Hardy, who are African American.  Bobby L. Tapley, a white man, was the sole Councilmember to be re-elected.  The new Councilmembers took office in November 2016.  The new City Council then passed a resolution to temporarily reappoint several department heads—including the Chief of Police—while it decided who to appoint to the four-year term to each leadership position.  Accordingly, the Plaintiff continued as Chief of Police at that time.

Over the next two months, the City Councilmembers received information that the Police Department suffered from low morale.  Captains Roth and Hodge, who also applied for the Chief of Police position in 2013, expressed to Councilmember Brown that there

were a variety of issues at the department, including that the Plaintiff had not updated or signed the police department's policies.  Captain Roth called Councilmember Spraggins to complain that the Plaintiff came to work late and took long lunches, and Captain Roth's wife also called Councilmember Spraggins to express similar complaints, such as that the Plaintiff came to work late and left early.  Captain Roth called Councilmember Funderburk to emphasize the low morale in the department, expressing frustration with the fact that people were not being given raises, and that the department needed new equipment. Multiple police officers then called Councilmember Funderburk to complain about lack of raises, poor equipment, concerns of retaliation if they spoke out, and the concern that the Plaintiff did not fight for their department.  Councilmember Brown received an email from Roth's wife regarding complaints against the Plaintiff.   A retired police officer called Councilmember Spraggins to express his feeling that the Plaintiff had not been a good Chief.   Councilmember Spraggins also heard that the police department in general no longer believed in the Plaintiff.  The current Alexander City Police Chief, Jerry Turner, testified that morale issues were due to lack of communication, which he had raised as an issue to the Plaintiff multiple times.  Further, Turner stated that during the Plaintiff's first promotion ceremony, the majority of the officers did not show up because they felt the Plaintiff had "rubbed them raw."  Meanwhile, the Councilmembers exchanged a series of emails discussing their concerns with the Plaintiff's and Jones's[4] performances, ranging from the high turnover rate in the police and fire departments, to individuals expressing

---

[4] Jones, the Fire Chief, was also up for reappointment by the City Council.  Like the Plaintiff, she was not reappointed.

fear of retaliation for complaining directly to them.   The Councilmembers discussed whether to reappoint the Plaintiff over a group text message begun by Councilmember Colvin.

The Councilmembers also attempted to investigate the Plaintiff's performance and interest in continuing as Chief of Police by speaking with him directly.   Both Councilmembers Hardy and Colvin spoke with the Plaintiff about the complaints made about him.   After speaking with the Plaintiff, Councilmember Colvin felt that the complaints might be somewhat motivated by competition for the role of Chief of Police, and Councilmember Hardy felt that the comments were not severe enough to interfere with the Plaintiff's reappointment.   Councilmembers Spraggins and Funderburk met with the Plaintiff to discuss the Plaintiff's plans for the police department.   The Plaintiff did not mention his interest in hiring more qualified African American police officers to any of the Councilmembers.

Finally, the Plaintiff simultaneously contemplated retirement. During his meeting with Councilmembers Spraggins and Funderburk, the Plaintiff expressed his wish to retire in October 2018.   Yet he submitted his retirement papers to the city and signed the final paperwork by December 27, 2016, shortly before the City Council meeting during which he was not reappointed.   The Plaintiff testified that he later changed his mind about retiring, although he did move forward with retirement from the department after he was not reappointed.

### C.  The January 9, 2017 City Council Meeting

On January 9, 2017, the City Council voted whether to reappoint the City Clerk, Police Chief, Fire Chief, City Attorney, and City Recorder. (Doc. 38-11).  The Council voted 3–2 not to reappoint the Plaintiff as Police Chief or Jones as Fire Chief, and it voted unanimously to reappoint the individuals in the other positions.  The newly elected Councilmembers voting against the Plaintiff included Councilmembers Spraggins, Funderburk, and Brown, while Colvin and Hardy voted to keep him.  Councilmember Tapley was not present for the vote, although he repeatedly reiterated his support for the Plaintiff and desire to vote to keep him as Chief of Police.  The vote for the Plaintiff fell along racial lines, excluding Councilmember Tapley's stated preference for the Plaintiff. At the meeting, the City Council acknowledged to the public that they privately texted each other on a Councilmember group text regarding whether to reappoint the Plaintiff.

Immediately thereafter, the City Council appointed then Deputy Chief Jerry Turner, a white man, to the position of interim Chief of Police.  The City Council eventually appointed Turner the Chief of Police for the remainder of the four-year term.  Turner began working for the Alexander City Police Department in 1992, and he was chosen to be Deputy Chief by the Plaintiff, who trained Turner and gave Turner outstanding performance ratings.  When Turner replaced the Plaintiff, the City no longer had any African American department heads. (Doc. 44 at 9).

## V.    DISCUSSION

### A. The Defendants' Motion to Strike

As a preliminary matter, the Defendants argue that the Court should strike several exhibits relied on by the Plaintiff in his response in opposition to the motion for summary judgment. (Doc. 46).  The Court addresses each of the exhibits in turn.

First, the Defendants argue that the Plaintiff's reliance on his previous EEOC Charge is inappropriate because it is inadmissible hearsay. *Id.* (citing Fed. R. Evid. 801(c)). Relying on *Coyle v. Dakko Prop. Mgmt., Inc.*, 2011 WL 13228177, at *3 (N.D. Ala. Jan. 4, 2011), the Defendants argue that, because it was drafted in anticipation of litigation, the document is both cumulative and unreliable.  In *Coyle*, the EEOC documents were not admitted at trial in part because the witness would instead take the stand. *See id.* ("Plaintiff will testify at this trial.  The court has reviewed the allegations in her charge and finds that she can adequately explain all of them while on the stand in front of the jury.  Thus, the charge would—even if it were not inadmissible hearsay—be cumulative.").  Furthermore, "a district court may consider a hearsay statement in passing on a motion for summary judgment if the statement could be reduced to admissible evidence at trial or reduced to admissible form." *Macuba v. Deboer*, 193 F.3d 1316, 1323 (11th Cir. 1999) (internal quotations omitted).  The Plaintiff's EEOC Charge summarizes the allegations and arguments he makes in this Court: that he was dismissed after thirty-nine years of service because of racially discriminatory motives, (doc. 43-2), but does not constitute evidence of the same.  However, because the statements in the EEOC document can be reduced to

admissible evidence at trial, the Court declines to strike the document and will give it the evidentiary weight it is due.

The Defendants next point to three newspaper articles cited by the Plaintiff as inadmissible hearsay:  an Opinion Editorial in the *Alexander City Outlook*, (doc. 43-7), an article in the *Alexander City Outlook* describing the City Council vote against the Plaintiff, (doc. 43-8), and an un-authored statement in the *Alexander City Outlook* thanking the Plaintiff and Fire Chief Kem Jones for their service to the city, (doc. 43-9).  The articles describe the meeting of the City Council on January 9, 2017, and they outline the Plaintiff's history with the Police Department.  While the Court does not consider the newspaper accounts to be of substantial evidentiary value, the Court will not strike the articles at this time because information within the articles can be reduced to admissible evidence at trial. *See Woods v. Dunn*, 2020 WL 1015763, at *9 (M.D. Ala. Mar. 2, 2020) (citing *Macuba*, 193 F.3d at 1323).

The Defendants also move to strike the Declaration of Kem Jones, (doc. 43-4), in its entirety as inadmissible hearsay, impermissible expert testimony, speculation, and irrelevant.  Declarations or "affidavits offered in support of or in opposition to a motion for summary judgment 'shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.'" *Moore v. Beneficial Nat. Bank USA*, 876 F.Supp. 1247, 1254 (M.D. Ala., 1995) (quoting Fed. R. Civ. P. 56(c)(4)) (emphasis removed). Because Jones could testify at trial, the Court declines to strike the Declaration from the

record because the evidence within it could be reduced to admissible evidence at trial. *See Macuba*, 193 F.3d at 1323.

## B. Legislative Immunity

The individual Defendants argue that they are entitled to legislative immunity because they were engaged in a legislative act by voting on appointments. "It is the nature of the act which determines whether legislative immunity shields the individual from suit." *Yeldell v. Cooper Green Hosp., Inc.*, 956 F.2d 1056, 1062 (11th Cir. 1992). Legislative immunity exists to protect government officials when they act in "an integral part of the deliberative and communicative processes by which [legislators] participate in ... proceedings with respect to the consideration and passage or rejection of proposed legislation." *Smith v. Lomax*, 45 F.3d 402, 405 (11th Cir. 1995) (quoting *Gravel v. United States*, 408 U.S. 606, 625 (1972)). The act of voting does not expressly give rise to legislative immunity and voting on an appointment "is not the sort of broad 'legislative' activity that is typically associated with grants of absolute immunity." *Id.* In contrast, a budgetary decision to eliminate an employment position is a legislative act, not an administrative one that warrants legislative immunity. *See Bryant v. Jones*, 575 F.3d 1281, 1306 (11th Cir. 2009) ("Unlike employee personnel decisions, the elimination of a public employment position does constitute a legislative act.").

In this case, between their election in November and when the City Councilmembers voted on Department Heads on January 9, 2017, the City Councilmembers attempted to determine whether the Plaintiff would be a successful Chief of Police during their tenure. Ultimately, they voted not to reappoint him at the City Council January 9, 2017 meeting.

The Court finds that the decision to not reappoint the Plaintiff was administrative in nature and is an employee personnel decision, more like that found in *Smith* than in *Bryant*. *Compare Smith*, 45 F.3d at 406, *with Bryant*, 575 F.3d at 1306–07. Because the City Council's decision was administrative, the Defendants are not entitled to legislative immunity. *See Smith*, 45 F.3d at 408 (affirming the denial of summary judgment based on legislative immunity).

### C.  Official Capacity Claims

To the extent the Plaintiff seeks to bring claims against Councilmembers Brown, Spraggins, and Funderburk in their official capacities, these claims are due to be dismissed. "Because suits against a municipal officer sued in his official capacity and direct suits against municipalities are functionally equivalent, there no longer exists a need to bring official-capacity actions against local government officials, because local government units can be sued directly . . . ." *Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir. 1991). The Plaintiff has sued Alexander City, the entity the individuals represent in their official capacities. A suit against the City Councilmembers is the functional equivalent of a suit against the City itself, and such claims are redundant and due to be dismissed.

### D.  Title VII Claim and Equal Protection Claim Pursuant to 42 U.S.C. § 1983

Title VII provides in part that it is unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a); *see also Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 348 (2013). The Plaintiff alleges

that the Defendants failed to reappoint him or to provide him with a new position because of his race.  The Plaintiff also brings an equal protection claim pursuant to 42 U.S.C. § 1983 against all the Defendants, arguing that they violated his right to equal protection, secured by the Fourteenth Amendment. U.S. CONST. amend. XIV, § 1.  Notably, "[s]ection 1983 actions challenging racial discrimination under the equal protection clause and Title VII disparate treatment cases both require a showing of discriminatory motive, and the nature of a prima facie showing is the same in either case." *Busby,* 931 F.2d at 777 (quoting *Lee v. Conecuh Cty. Bd. of Educ.*, 634 F.2d 959, 962 (5th Cir. 1981)); *see also Santillana v. Fla. State Court Sys.*, 450 F. App'x 840, 842 (11th Cir. 2012) ("In the employment context, § 1983 contains the same elements of proof and analytical framework as a Title VII claim made under 42 U.S.C. § 2000e–2.").  Accordingly, the Court will analyze the Plaintiff's Title VII and Equal Protection claims together.

A Title VII plaintiff may bring a single-motive claim to be analyzed under the *McDonnell Douglas*[5] burden shifting framework, or a mixed-motive claim to be analyzed under the framework set forth in *Quigg v. Thomas Cty. Sch. Dist.*, 814 F.3d 1227, 1239 (11th Cir. 2016).  In his complaint, the Plaintiff alleged a single motive Title VII claim against Alexander City, arguing that the City Council illegally terminated him and failed to allow him to remain employed because of his race. (Doc. 1 at 9–10).  However, in response in opposition to the Defendants' motion for summary judgment, the Plaintiff argues a mixed-motive claim.  The Plaintiff does not assert that he pleaded a mixed-motive

---

[5] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

claim but instead offers authority for the proposition that such a failure does not constitute waiver.  (Doc. 44 at 11, n.58) (citing *Babb v. Sec'y, Dep't of Veterans Affairs*, 743 F. App'x 280, 286–87 (11th Cir. 2018), *rev'd*, *Babb v. Wilkie*, 140 S.Ct. 1168 (2020)).   In that context, the Plaintiff did not analyze the Title VII discrimination claim under *McDonnell Douglas* but instead offered argument under the mixed-motive framework.    The Defendants respond that the Plaintiff cannot change his theory to mixed-motives through his opposition to summary judgment, and that the Federal Rules of Civil Procedure do not allow new claims at summary judgment. *See Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1314–15 (11th Cir. 2004) (holding that the liberal pleading standard "does not afford plaintiffs with an opportunity to raise new claims at the summary judgment stage").

The Plaintiff offers little support for his apparent argument that he did not clearly assert a mixed-motive claim in his complaint because discovery was necessary to determine whether mixed motives played a part in the decision not to reappoint him.  He seems to explain his failure to plead a mixed-motive claim by asserting, simply, that he does not have to do so.  He also fails to identify any pleading or discovery that would have put the Defendants on notice of a mixed motive claim.  The Plaintiff, instead, faults the Defendant for focusing on the *McDonnell-Douglas* analysis in its motion for summary judgment and for failing to analyze the claim under a mixed-motive theory.  (Doc. 44 at 10, n.58).  The Plaintiff goes on to assert that "[b]ecause Defendants are responsible for the scope of their motion, they abandoned any argument against this [mixed-motive] theory by not raising it in their initial brief" and argues that they "should not be allowed to argue against the mixed-motive/motivating factor analysis in its reply brief…."  (*Id.*).  These

competing arguments highlight the problem with parties failing to plainly articulate the nature of their claims in their complaints and/or fleshing out the true nature of the claims during discovery. Whether this lack of clarity regarding the nature of the Plaintiff's claims is a deficiency in pleading or discovery or both, the Court is left to decide the appropriate legal standard to apply.

The Court concludes that, based on the record before it, the Plaintiff neither pleaded a mixed-motive claim in his complaint nor put the Defendants on notice in discovery or otherwise that he was making a claim under that theory. Accordingly, the Court applies the single-motive framework set out in *McDonnell Douglas* to the Plaintiff's Title VII claim.

1. *The Plaintiff is an employee for purposes of Title VII.*

As a preliminary matter, an individual must be an "employee" within the definition of the act to bring a Title VII claim:

> [t]he term "employee" means an individual employed by an employer, except that the term "employee" shall not include any person elected to public office in any State or political subdivision of any State by the qualified voters thereof, or any person chosen by such officer to be on such officer's personal staff**,** or an appointee on the policy making level or an immediate adviser with respect to the exercise of the constitutional or legal powers of the office. The exemption set forth in the preceding sentence shall not include employees subject to the civil service laws of a State government, governmental agency or political subdivision. With respect to employment in a foreign country, such term includes an individual who is a citizen of the United States.

42 U.S.C. § 2000e(f); *see also Blevins v. City of Tuskegee*, 2010 WL 2541147, at *4 (M.D. Ala. June 18, 2010) ("[O]nly those plaintiffs who are 'employees' may bring a Title VII

suit.") (quoting *Llampallas v. Mini-Circuits, Lab, Inc.*, 163 F.3d 1236, 1242 (11th Cir. 1998)).  Thus, the statute provides for several exceptions to "employee" status, which would prevent any individual falling in one of those categories from bringing a Title VII suit.

The Defendants argue that the Plaintiff's Title VII claim is due to be dismissed because the Chief of Police position is "an appointee on the policy making level or an immediate adviser with respect to the exercise of the constitutional or legal powers of the office," and thus he is not an employee within the meaning of Title VII. *See* 42 U.S.C. § 2000e(f).  The Defendant argues in detail why the Plaintiff fits within the appointee on the policy making level exception: (1) he is appointed by the elected City Council serving for a fixed term; and (2) his position description allows him to create and carry out department policies.

The Plaintiff wholly fails to address this argument in his brief in opposition to the Defendants' motion for summary judgment.  At most, the Plaintiff asserts that he "stopped being an employee of the city" when the City Council did not reappoint him on January 9, 2017. (Doc. 44 at 16).  He otherwise makes no reference in response to the motion for summary judgment to whether he is an "employee" for the purposes of the statute, let alone address why he does not fall into the appointee on the policy making level exception.

Despite the Plaintiff's failure to address this argument head on, the Court assumes without deciding that he was an employee for the purposes of Title VII.  Notably, the Defendants assert that the Plaintiff did not suffer an adverse employment action because he "remained a city employee" and chose to retire "without requesting any other position

or allowing the new Police Chief the opportunity to assign him to any other position." (Doc. 39 at 8; Doc. 45 at 24). Therefore, it appears that the Defendants acknowledge that but for the Plaintiff's retirement, he would have remained employed by the City. Therefore, the Court presumes this to be the case for the purposes of summary judgment.

### 2. McDonnell Douglas Framework

To establish a *prima facie* case of disparate treatment based on his race, the Plaintiff must show that (1) he is a member of a protected class, (2) he was qualified for his position, (3) he suffered an adverse employment action, and (4) similarly situated employees outside of his protected class were treated more favorably. *Maynard v. Bd. of Regents of Div. of Univs. of Fla. Dept. of Educ. ex rel. Univ. of S. Fla.*, 342 F.3d 1281, 1289 (11th Cir. 2003). It is undisputed that the Plaintiff is a member of a protected class. And, as a member of the Police Department for thirty-nine years and the Chief of Police for four, the Plaintiff was qualified to continue with his job. With respect to the third prong, the Defendants dispute whether they subjected the Plaintiff to an adverse employment action. While the Eleventh Circuit has not directly addressed this issue, other Circuits have found that the failure to reappoint is an adverse action. *See Doucet v. Univ. of Cincinnati*, 2007 WL 2445993, at *5 (6th Cir. 2007); *Welch v. Ciampa*, 542 F.3d 927, 936 (1st Cir. 2008). The Court finds these cases persuasive, and that when the Plaintiff was not reappointed, he suffered an adverse employment action. Moreover, Turner serves as a similarly situated comparator to meet the final prong of the Plaintiff's *prima facie* case because Turner and the Plaintiff are "similarly situated in all material respects." *Lewis v. City of Union City*, 918 F.3d 1213, 1218 (11th Cir. 2019).

To the extent that the Plaintiff points to former Police Chief Royal as a similarly situated comparator, that assertion fails.  Royal, a white man, was the Chief of Police in Alexander City in the early 1990s.  The Plaintiff argues that when Royal was not reappointed as Chief of Police, he was given a public safety officer position with the Police Department.  Royal thus had a new position within the Police Department until he retired, unlike the Plaintiff.  The Plaintiff contends that he had to retire immediately after he was not reappointed on January 9, 2017 because the Defendants did not give him a position. On this aspect, his argument fails.  The Plaintiff presents no evidence that he and Royal are similarly situated.  The Plaintiff points to a single comment made by Councilmember Colvin about Royal: she stated that a concerned citizen texted her that Royal had been made a public safety officer until retirement. (Doc. 38-17).  This is simply not enough to establish that Royal is a valid comparator.

After establishing a *prima facie* case, the burden shifts to the Defendants to articulate a legitimate, non-discriminatory reason for their decision to not appoint the Plaintiff as Chief of Police or to place him in another position. *See id.*  The Defendants proffer evidence that prior to the January 9, 2017 meeting, they received numerous complaints regarding the Plaintiff's leadership style and work.  Because these reasons articulate legitimate, non-discriminatory reasons for the Defendants' decision, the burden shifts to the Plaintiff to establish their reasons were pretextual. *See Brooks v. Cty. Com'n of Jefferson Cty.*, 446 F.3d 1160, 1162 (11th Cir. 2006).  The Plaintiff must show that the Defendants' "proffered reason was not its true reason, which merges with the plaintiff's ultimate burden of persuading the court that the employer intentionally discriminated

against [him]." *Alvarez v. Royal Atlantic Developers, Inc.*, 610 F.3d 1253, 1265 (11th Cir. 2010).  It is here that the Plaintiff ultimately fails.

In order to show pretext, the Plaintiff "must demonstrate 'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence.'" *Id.* (citing *Combs v. Plantation Patterns*, 106 F.3d 1519, 1538 (11th Cir. 1997)).  The Defendants offer as legitimate reasons for the employment action, problems with the Plaintiff's leadership and work product; specifically: low employee morale, lack of communication, failure to update policies, the Plaintiff's prohibiting employees from contacting the Human Resources department, officers' fear of retaliation for complaining, lack of raises, poor equipment, and the Plaintiff's failure to fight for the police department.  (*See* Docs. 39 at 21-24; 45 at 35-36).  Because these are reasons that might motivate a reasonable employer, the Plaintiff must meet these reasons head on and rebut them; he "cannot succeed by simply quarreling with the wisdom of that reason." *Alvarez*, 610 F.3d at 1266 (citing *Chapman v. AI Transp.*, 229 F.3d 1012, 1030 (11th Cir. 2000)(en banc)).  The Plaintiff asserts that "[t]here is a factual dispute as to whether [his] race was a motivating factor for the termination" and points to "vague" testimony about the basis for the employment decision.  (Doc. 44 at 12; 14).  The Plaintiff argues that his work history and community support rebuts any assertion that he lacked leadership, and he takes issue with the councilmembers' failure to talk to him about the complaints so he could defend himself.  The problem for the Plaintiff is that he does not present evidence sufficient to establish that the proffered reasons are pretext for discrimination.  The Plaintiff may not

simply "litigate whether [he was], in fact [a] good employee[]." *Alvarez*, 610 F.3d at 1266 (citing *Rojas v. Florida*, 285 F.3d 1339, 1342 (11th Cir. 2002). His burden is not to show that the proffered reasons for the employment decision "were ill-founded but that unlawful discrimination was the true reason." *Alvarez*, 610 F.3d at 1267. The Plaintiff fails to point the Court to evidence that the employment decision was motivated by discriminatory intent. Accordingly, he fails to meet his burden under the *McDonnel Douglas* framework.

Notwithstanding the *McDonnell Douglas* analysis, the Plaintiff can still overcome a motion for summary judgment by presenting "a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker." *Smith*, 644 F.3d at 1328 (quoting *Silverman v. Bd. Of Educ.*, 637 F.3d 729, 734 (7th Cir. 2011)). A convincing mosaic might include "evidence that demonstrates, among other things, (1) 'suspicious timing, ambiguous statements . . . , and other bits and pieces from which an inference of discriminatory intent might be drawn,' (2) systematically better treatment of similarly situated employees, and (3) that the employer's justification is pretextual." *Lewis*, 934 F.3d at 1185 (quoting *Silverman*, 637 F.3d at 733–34).

The Plaintiff does not present sufficient circumstantial evidence of suspicious timing, ambiguity, systematic better or worse treatment of similarly situated employees, or pretext to present a convincing mosaic upon which intentional discrimination can be inferred. The Plaintiff's proffered circumstantial evidence includes: (1) the Plaintiff's work history; (2) the Defendants' testimony being too "vague" for summary judgment purposes; (3) the Councilmembers failed to discuss the specific complaints with the Plaintiff; (4) that the failure to reappoint the Plaintiff eliminated the only non-white

department head; and (5) concerns were expressed by constituents that the decision might be racially motivated. (Doc. 44 at 16–7).  This circumstantial evidence falls far short of showing that the City Council impermissibly relied on the Plaintiff's race when making their decision.

Instead, the record reveals a series of unambiguous complaints about the Plaintiff's leadership style and work.  The Defendants proffer evidence that prior to the January 9, 2017 meeting, they received numerous complaints about (1) police department morale; (2) the Plaintiff's habits of arriving late, taking long lunch breaks, and leaving early; (3) concerns about lack of communication; (4) failure to sign new policies; (5) failure to make requests for new equipment for the department; (6) failure to make requests for raises within the department; and (7) fear of retaliation if officers spoke out.  The Defendants present this evidence as legitimate, non-discriminatory reasons for not reappointing the Plaintiff as Chief of Police.  As with pretext, the Plaintiff fails to present sufficient evidence to refute the Defendants' reasons or to demonstrate that the Defendants' reasons were false and that the real reason was discrimination.  Thus, even when viewed in the light most favorable to the Plaintiff, his factual showing does not create a triable claim of race discrimination; "conclusory allegations without specific supporting facts have no probative value." *See Leigh v. Warner Bros., Inc.*, 212 F.3d 1210, 1217 (11th Cir. 2000) (quoting *Evers v. General Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985)).

The Plaintiff also suggests that his interest in hiring more African American officers might have motivated the City Council, but he failed to bring forward any evidence that the Councilmembers knew he and Jones had that interest, let alone that the

Councilmembers were motivated by it.  In fact, Councilmember Hardy—who voted to keep the Plaintiff—voted against keeping Jones.  The record reveals that only Councilmember Brown even received a complaint connected to this argument, but he stated that he did not rely on the complaint as a reason to not reappoint the Plaintiff.  And the Plaintiff did not dispute his assertion.  Without any evidence to support it, this allegation fails at summary judgment.

Overall, absent any evidence suggesting that race was a motivating factor in the City Council's decision, the Plaintiff does not present a triable issue of discriminatory intent. As an explanation for the employment action, the Plaintiff posits "[t]he only reason I can come up with [is] my race."  (Doc. 44 at 17).  "[U]nsubstantiated assertions alone are not enough to withstand a motion for summary judgment." *Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1529 (11th Cir. 1987); *see, e.g.*, *Carter v. Three Springs Residential Treatment*, 132 F.3d 635, 642 (11th Cir. 1998) (conclusory allegations without specific supporting facts have no probative value).

Accordingly, the Defendants' motion for summary judgment is due to be granted on the Plaintiff's Title VII and § 1983 Equal Protection claims.[6]

---

[6]   Even under the mixed-motive framework, the Plaintiff would fail to meet his burden.

When a Title VII plaintiff alleges mixed-motives by the defendants, the Court applies the summary judgment framework outlined in *Quigg*. 814 F.3d at 1239.  "That framework requires a court to ask only whether a plaintiff has offered 'evidence sufficient to convince a jury that: (1) the defendant took an adverse employment action against the plaintiff; and (2) [a protected characteristic] was *a* motivating factor for the defendant's adverse employment action.'"  *Id.* (quoting *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 400 (6th Cir. 2008) (internal quotation marks omitted)).  "[T]he plaintiff will always survive summary judgment if he presents circumstantial evidence that creates a triable issue concerning the employer's discriminatory intent." *Smith*, 644 F.3d at 1328.

The question is whether a reasonable jury could determine that race was a motivating factor in the decision not to reappoint the Plaintiff.  "Statements by the [defendants] or others involved with the [defendants'] decisional process that suggest bias can serve as evidence of discrimination." *Quigg*, 814 F.3d

**E.  42 U.S.C. § 1981 Claim**

The Plaintiff brings a § 1981 claim against Alexander City.  Pursuant to § 1981, "[a]ll persons . . . shall have the same right . . . to make and enforce contracts, to sue, be parties, [and] give evidence . . . as is enjoyed by white citizens." 42 U.S.C. § 1981.  The Supreme Court, in *Comcast Corp. v. Nat'l Ass'n of African American-Owned Media*, held that § 1981 plaintiffs must prove but-for causation. 140 S.Ct. 1009, 1014 (2020) (holding, "a plaintiff must demonstrate that, but for the defendant's unlawful conduct, its alleged injury would not have occurred").  Accordingly, the § 1981 plaintiff bears the burden of demonstrating that "race was a but-for cause of its injury," or that "the defendant would have responded differently but for the plaintiff's race . . . ." *Id.* at 1014–15.

Without sufficient evidence to present a triable issue of fact that race was a motivating factor in the decision not to reappoint him, the Plaintiff similarly fails to establish that he would have been reappointed but for his race.  Accordingly, the

---

at 1241.  If a remark indirectly evidences discrimination, then the plaintiff must point to surrounding circumstances that demonstrate a genuine issue of material fact regarding whether the Councilmembers relied on race in making their decision. *Id.*  "An employee challenging a decision made by a board can succeed on a mixed-motive claim if she demonstrates that 'discriminatory input,' such as sex or gender-based bias, factored into the board's 'decisional process.'" *Id.* (quoting *Price Waterhouse*, 490 U.S. at 272).  However, when the plaintiff relies solely on remarks that indirectly evidence discrimination, he must establish that there is a genuine issue of material fact that his protected characteristic was actually relied on in the decision-making process. *Id.*

For example, in *Quigg*, the employers made specific comments about the job sought by the female plaintiff, revealing impermissible bias as a motivating factor in their decision-making process.  They remarked that they needed to hire a "hatchet man," a "strong man," and someone who could get "tough" in the job. *Id.*  The Court found that the multiple statements could prove bias as a motivating factor, in particular because they were made "(1) during conversations about whether to renew [the plaintiff's] contract, (2) in relative temporal proximity to the vote, and (3) specifically referring to the composition of the office" in question. *Id.* at 1242.

The Plaintiff does not point to evidence that reveals discriminatory intent was a motivating factor for the employment action.

Defendants' motion for summary judgment is due to be granted on the Plaintiff's § 1981 claim. *See id.*

### F.  42 U.S.C. § 1983 Equal Protection Claim Based on Custom and Policy

The Plaintiff alleges that Alexander City deprived him of his equal protection rights as a consequence of the City's customs or policies. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–91 (1978).  A local government may be held liable for discriminatory behavior through its customs or policies, whether through an express policy or through a widespread practice "so permanent and well settled as to constitute a custom and usage with the force of law." *Cuesta v. School Bd. of Miami-Dade Cty.*, 285 F.3d 962, 966 (11th Cir. 2002) (quoting *Brown v. City of Fort Lauderdale*, 923 F.2d 1474, 1481 (11th Cir. 1991) (internal quotations omitted) (quoting *City of St. Louis v. Praprotnik*, 485 U.S. 112, 113 (1988))).  But "[i]t is not sufficient for a government body's policy to be tangentially related to a constitutional deprivation.  The 'official policy or custom must be the moving force of the constitutional violation in order to establish liability of a government body under § 1983.'" *Cuesta*, 285 F.3d at 967 (quoting *Gilmere v. City of Atlanta*, 737 F.2d 894, 901 (11th Cir.1984) (internal quotations omitted)).  The plaintiff must establish a "direct causal link between the municipal action and the deprivation of federal rights." *Bd. of Cty. Comm'rs of Bryan Cty. v. Brown,* 520 U.S. 397, 404 (1997).  A single illegal action by an official authorized to make final policymaking decisions may be sufficient. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480–81 (1986).

Because the Plaintiff does not specify whether he brings alleges widespread practice within Alexander City or a single illegal action by a policymaker for purposes of his § 1983 claim based on custom and policy, the Court addresses both in turn.[7]

First, the Plaintiff fails to present evidence demonstrating a widespread practice of racial discrimination in Alexander City which would create a "direct causal link" between the alleged action and his injury. *See Bd. of Cty. Comm'rs,* 520 U.S. at 404.  Viewed in the light most favorable to the Plaintiff, the record before the Court does not reveal any discriminatory practices, making it impossible to raise an inference of widespread discriminatory practices by the City. *See id.*  The Plaintiff fails to demonstrate discriminatory policies were a "moving force" behind his not being re-elected. *See Cuesta*, 285 F.3d at 967 (quoting *Gilmere*, 737 F.2d at 901).

Second, the claims brought by the Plaintiff regarding the City Council's vote on January 9, 2017 do not demonstrate a single illegal action by a policymaking authority. *See Pembaur*, 475 U.S. at 480–81.  The Plaintiff asserts that his "equal protection claim against Alexander City brought under § 1983 rests on her [sic] Title VII analysis…." (Doc. 44 at 21).  As discussed previously, the Defendants did not act in violation of Title VII or § 1981, nor did they violate the Plaintiff's equal protection rights when they failed to reappoint the Plaintiff.  Accordingly, the Plaintiff's claim based on policy or custom is due to be dismissed.

---

[7] The Court is compelled to observe that in "presenting arguments to busy trial courts, subtlety is no virtue." *United States v. Reyes Vasquez*, 905 F.2d 1497, 1499 (11th Cir. 1990).

**G. Qualified Immunity**

Because the Court finds that the Defendants did not violate the Plaintiff's constitutional rights pursuant to § 1983, it pretermits discussion of the Defendants' claim of qualified immunity.

## VI.    CONCLUSION

For the reasons as stated, and for good cause, it is ORDERED as follows:

1.  The Defendants' Motion to Strike, (doc. 46), is DENIED,

2.  The Defendants' Motion for Summary Judgment, (doc. 37), is GRANTED, and final judgment will be entered in favor of the Defendants and against the Plaintiff.

3.  Costs are taxed against the Plaintiff for which execution may issue.

A separate final judgment will be entered.

DONE this 10th day of September, 2021.

_____      /s/ Emily C. Marks_____
EMILY C. MARKS
CHIEF UNITED STATES DISTRICT JUDGE